PINKNEY ROLLINS and others v. R. M. HENRY and others.

*Restitution—Receiver—Practice.*

1. When this Court has decided that certain tenants of H were wrong-
fully evicted, and ordered writs of restitution, these writs must issue
and must be obeyed, and possession of the premises restored to H or
his tenants, before the Court will entertain any motion for the appoint-
ment of a Receiver to collect and hold the rents and profits.

2. Whenever the contest is simply a question of disputed title to proper-
ty, the plaintiff asserting a legal title in himself against a defendant in
possession, receiving the rents, &c., under a claim of legal title, a Re-
ceiver will not be appointed, even if the defendant is insolvent.

3. A Receiver will be appointed only when plaintiff sets forth an appa-
rently good title, not sufficiently controverted in the answer, and shows
imminent danger of loss by defendant's insolvency.

4. The bond required of defendants under C. C. P. § 382, is not for costs
only, but secures plaintiff's such damages as they may sustain in the
loss of rents, &c., and it seems that this bond may be increased in the
discretion of the Court if defendant shows any disposition to delay a
trial.

(*Rollins* v. *Rollins*, 76 N. C. 264, cited, commented on and appproved.

MOTION by the plaintiffs for the Appointment of a Re-
ceiver of certain premises, pending an action for the recovery
of the same, heard at Spring Term, 1877, of BUNCOMBE Supe-
rior Court, before *Furches, J.*

The case is sufficiently stated in the opinion of this Court.
His Honor overruled the motion and the plaintiffs appealed.

*Mr. J. H. Merrimon,* for plaintiffs.
*Messrs. T. F. Davidson* and *Battle & Mordecai,* for defend-
ants.

BYNUM, J. In *Rollins* v. *Rollins,* 76 N. C. 264, and the
two next succeeding cases of the same plaintiffs against
Bishop and Henry, it was decided by this Court, that R. M.

Henry was entitled to defend those actions and that the tenants claiming under him had been illegally evicted and were entitled to restitution of possession, pending the actions. In part execution of the judgment of this Court, at the last term of the Court below the several actions were consolidated and the defendant R. M. Henry on filing the bond required by law, was allowed to put in his defences to the action. But when in further compliance with the decision of this Court, the counsel for the defendants moved that writs of restitution be issued in behalf of the evicted tenants, it was met by a counter motion of the plaintiffs for the appointment of a Receiver of the premises in dispute, pending the litigation of the title. The Court refused to appoint a Receiver and ordered writs of restitution to issue and from these orders the plaintiffs appealed to this Court There is no error. This Court had adjudged that the tenants were entitled to restitution of possession, and a prompt obedience to that decision was the first duty of the plaintiffs; instead of which the plaintiffs proceeded, to use a military phrase, by a "flank movement," the effect of which if allowed would have been not only to evade the decision of the Court, but still more effectually to deprive the defendants of that possession of the premises, to which the Court had declared they were entitled.

Possession, entire and complete, must be given to the defendants; and it matters not to the plaintiffs, whether this restitution is made directly to Henry himself, or indirectly through his tenants, but the plaintiffs are to divest themselves of all possession as fully as they were divested before they sued out the writs under which they obtained the possession; and the defendants are to be placed in the same state and condition as they were at that time. Placed thus at arms length as they were before the wrongful eviction, the Court will then be open to hear and determine such motions as may properly arise in the progress of the cause.

While therefore the Court properly enough refused to appoint a Receiver or make any other order before the plaintiffs had restored their tortious possession, it does not follow that after such possession is delivered, the plaintiffs may not present a case fit for the protective interference of the Court. But as no such question can be raised until after the judgment of this Court, as determined at last term, has been complied with by the surrender of the premises to the defendants, we might properly say no more at this time. As however the same motion for a Receiver will doubtless be renewed after the decision of this Court has been complied with by the restitution of the possession to the defendants, it will be convenient to the parties in the further conduct of the action, as far as possible, to dispose of that question now.

We believe that no authority can be found, where a Court of Equity ever appointed a Receiver in a case like this. The rule seems to be universal in this country and in England, that whenever the contest is simply a question of disputed title to the property, the plaintiff asserting a legal title in himself against a defendant in possession and receiving the rents and profits under a claim of legal title, equity refuses to lend its extraordinary aid by interposing a Receiver, just as it refuses an injunction under similar circumstances, leaving the plaintiff to assert his title in the ordinary forms of procedure at law. Nor does the fact that the defendant in possession and receiving the rents and profits, is insolvent, at all affect the rule. There are exceptions to this general rule, but they are only where the relief is granted upon special circumstances of an equitable nature, appealing strongly to the conscience of the Court. The farthest the Courts have ever gone in taking jurisdiction to appoint a Receiver in actions of ejectment against a tenant in possession of real property, is, where the plaintiff shows a probable title and danger of the rents being lost. *Scott* v. *Scott*, 13 Irish Eq. 212; High on Receivers, § § 553, 554, 567; 2 Story

Eq. § § 826, 829. And such is the provision of our statute defining the cases where a Receiver may be appointed. C. C. P. § 215. By that provision a Receiver can be applied for only when the party has established an apparent right to property which is the subject of the action and which is in possession of the adverse party, and the property or its rents and profits are in danger of being lost, injured, or impaired. This apparent right of property, which will authorize the appointment of a Receiver, must, we conceive, appear to the Court from the pleadings, or in the progress of the trial, and not by separate affidavits. It may be that insolvency or the danger of the loss of rents and profits can be so established, but not the right of property—the very matter in issue. For instance, if the plaintiffs here in their action to recover this land had set forth in their complaint an apparently good title which was not successfully controverted in the answer, and in addition thereto had shown imminent danger of loss of rents and profits by the insolvency of the tenants in possession, a motion for a Receiver might be granted for the preservation of the rents and profits, *pendente lite.* But without the establishment of this apparent good title, such interference would in effect amount to a complete ouster of the defendants, by taking away from them the subject matter of the litigation without trial or judgment. High on Receivers, § 575.

If the plaintiffs desired to establish by the pleadings such an apparent good title as would warrant the appointment of a Receiver, it was their duty to set forth in their complaint a good title in themselves, with such particularity of statement, description and averment, as would compel the defendants by their sworn answer to the allegations to admit or enable the Court to see a *prima facie* or apparent title in the plaintiffs. Nothing of the sort is done. Indeed so defective and meagre are the pleadings, that it would seem to be impracticable to try the action without amendments.

ROLLINS v. HENRY.

But although no case is presented warranting the extraordinary remedy of a Court of Equity applied for, the law has not left the plaintiffs without that degree of protection which their own disputed claim authorizes the Courts to furnish. Before the defendant Henry could be allowed to defend the action, the law required that he should file a bond with sureties for the sum of $200 to be void on condition that he pay to the plaintiffs all such costs and damages as the plaintiffs may recover in the action. C. C. P. § 382. We are of opinion that this bond is not for costs only, but that it was intended to and does secure to the plaintiffs in case they recover, such damages as they may sustain in the loss of rents and profits or otherwise, by the wrongful possession of the defendants. We are also inclined to hold that this bond may be increased from time to time as the Court may order in its discretion, having reference as much to the readiness of the parties to try, as to the preservation of the property and its rents and profits to answer the ultimate recovery by the true owner. If the defendant shows a readiness to try the title and to interpose no obstacle to a speedy determination of the action, the Courts will be slow in imposing upon him the inconvenience and hardship of giving a larger bond. In such case the plaintiff cannot by his own delay in bringing on a speedy trial impose this additional burden upon the defendant who is in no default. To give that effect to the procrastination of the plaintiff, would be to allow him to take advantage of his own wrong to the oppression of the defendant.

Subject to this precaution and the circumstances surrounding each case, the power of the Court to enlarge the bond seems to be similar to that which the Courts constantly exercise in regard to bonds for costs.

It is true that in case the defendant is unable to give the bond he may nevertheless defend the action without giving bond, on a proper application for that purpose under C. C.

P. § 382 ; and thus the plaintiff would have no security for the recovery of rents and profits from the tenant holding wrongfully. Whether this state of things would constitute such an equitable element as to invoke the jurisdiction of a Court of Equity, to prevent. wrongs and anticipated mischiefs, by the appointment of a Receiver, or whether the plaintiff must submit to this inconvenience and probable loss just as defendants do, when the plaintiff is allowed from poverty to prosecute his action without giving bond for costs, are questions which do not now arise and which we do not answer in anticipation.

There is no error.

PER CURIAM.                              Judgment affirmed.